**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| YVETTE MARSHALL, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NOVANT HEALTH, INC.,<br><br><br>　　　　　Defendants. | Case No. 3:18-cv-00633-MOC-DCK |

## DEFENDANT NOVANT HEALTH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Patrick E. Kelly, NC State Bar No. 16703
Kimberly J. Kirk, NC State Bar No. 44255
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina 28204
T: 704.332.1181
F: 704.376.1628
pkelly@jahlaw.com
kkirk@jahlaw.com

Sari M. Alamuddin (*admitted pro hac vice*)
Christopher J. Boran (*admitted pro hac vice*)
Patrick R. Duffey (*admitted pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
T: 312.324.1000
F: 312.324.1001
sari.alamuddin@morganlewis.com
christopher.boran@morganlewis.com
patrick.duffey@morganlewis.com

*Attorneys for Defendant, Novant Health, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

UNDISPUTED MATERIAL FACTS ................................................................................. 3

I.      The Novant Health System ......................................................................................... 3

II.     Novant Health Maintains Written Policies And An Electronic Timekeeping System ....................................................................................................................... 3

III.    Plaintiff Is A Registered Nurse At The Rocky River Urgent Care Clinic ...................... 4

IV.     Plaintiff Understood That She Should Use The No Lunch Code For Missed Or Interrupted Meal Breaks, And She Did So Repeatedly ................................................. 6

V.      Plaintiff Concedes That She Has No Claim For Unpaid Meal Breaks In 2017 Or 2019, That She Only Had Difficulty Taking Meal Breaks In 2018 Between 12:30 p.m. And 2:00 p.m., And That She Never Told Her Supervisors She Missed A Meal Break Without Using The No Lunch Code ............................................................ 6

VI.     Plaintiff Agrees She Was Paid An Appropriate Overtime Rate, And That The Complaint's Contrary Allegations Are Mistaken ......................................................... 9

STANDARD OF REVIEW ................................................................................................. 9

ARGUMENT ..................................................................................................................... 9

I.      Plaintiff's FLSA Claims Fail As A Matter Of Law ...................................................... 9

        A.      Plaintiff Has Admitted That Her Overtime Rate Claim Is Without Merit ........... 10

        B.      Plaintiff's Meal Break Claim Fails Because She Had Plenty Of Time To Take Meal Breaks And Because Novant Health Lacked Knowledge Of Any Uncompensated Meal-Break Work Plaintiff Allegedly Performed ............. 10

                1.      No Reasonable Jury Could Find That Plaintiff Was Deprived Bona Fide Meal Periods ........................................................................... 11

                2.      There Is No Evidence That Novant Health Knew Plaintiff Worked During Meal Breaks Without Using The No Lunch Code ..................... 12

II.     Plaintiff's NCWHA Claims Fail As A Matter of Law ................................................... 15

CONCLUSION ................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Cnty. of Georgetown*,
94 F.3d 152 (4th Cir. 1996) ...................................................11

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*,
2011 WL 4351631 (W.D.N.C. Sept. 16, 2011) ...................................................12

*Deppen v. Detroit Med. Cntr.*,
2011 WL 2847405 (E.D. Mich. July 19, 2011) ...................................................12, 14, 15

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
646 F.2d 413 (9th Cir. 1981) ...................................................13

*Hill v. United States*,
751 F.2d 810 (6th Cir. 1984) ...................................................11

*Jones v. Philip Morris USA, Inc.*,
2004 WL 769456 (M.D.N.C. Apr. 8, 2004) ...................................................9

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...................................................9, 12

*Meran v. Rank Trade Servs., Inc.*,
2017 WL 2901202 (S.D. Fla. May 1, 2017) ...................................................10

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
162 F. Supp. 3d 490 (W.D.N.C. 2016) ...................................................15

*Roberts v. Advocate Health Care*,
119 F. Supp. 3d 852 (N.D. Ill. 2015) ...................................................11, 14, 15

*Roy v. Cnty. of Lexington, S.C.*,
141 F.3d 533 (4th Cir. 1998) ...................................................10, 11

*White v. Baptist Mem'l Health Care Corp.*,
699 F.3d 869 (6th Cir. 2012) ................................................... *passim*

*Zahodnick v. Int'l Bus. Machs. Corp.*,
135 F.3d 911 (4th Cir. 1997) ...................................................9

**Statutes**

29 U.S.C. § 203(g) ...................................................11, 16

29 U.S.C. § 207 ..............................................................................................................10

N.C. Gen. Stat. § 95–25.2(3) .........................................................................................16

N.C. Gen. Stat. § 95–25.2(8) .........................................................................................16

N.C. Gen. Stat. § 95-25.6 ...............................................................................................16

N.C. Gen. Stat. § 95-25.7 ...............................................................................................16

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................................9

**Regulations**

29 C.F.R. § 783.3(d) .......................................................................................................11

13 N.C. Admin. Code 12.0103 .......................................................................................16

# INTRODUCTION

Plaintiff Yvette Marshall is a Registered Nurse at an urgent care clinic affiliated with Defendant Novant Health, Inc.  She claims Novant Health violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, by (1) failing to pay her an appropriate overtime rate; and (2) failing to pay her overtime for work she allegedly performed during meal breaks.  ECF No. 1, Compl. ¶¶ 14-19, 23-27, 58-70.  Based upon the same unpaid meal-break allegations, Plaintiff also claims she was deprived regular (non-overtime) wages in violation of the North Carolina Wage Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1.  Compl. ¶¶ 71-77.[1]

Novant Health is entitled to summary judgment on each of these claims.[2]  To start, Plaintiff has disavowed her claim that she was not paid an appropriate overtime rate under the FLSA. During her deposition, Plaintiff closely reviewed her pay stubs and candidly admitted that the Complaint's overtime-rate allegations are simply wrong.  Because Plaintiff now agrees that she indeed has been paid an appropriate rate for overtime hours worked, Novant Health is entitled to summary judgment on her first claim above.

Plaintiff's remaining "unpaid meal break" claims concern Novant Health's practice of automatically deducting a 30-minute meal break from certain shifts.  Under this practice, Plaintiff admits that she was encouraged to take a meal break when available during her shift and to report any missed or interrupted meal breaks by simply entering the "No Lunch" code in the timekeeping system, ensuring she would be paid for that time.  Not only is this practice common and perfectly

---

[1] Plaintiff purports to bring her FLSA claims as a "collective action" under 29 U.S.C. § 216(b), and her NCWHA claims as a Rule 23 class action.  Compl. ¶¶ 34-35, 46-47.  However, in the more than eight months this case has been pending, no one has filed a consent to "opt in" to the case.

[2] For the limited purpose of this motion only, Novant Health does not challenge its status as Plaintiff's employer under the FLSA or NCWHA.  Novant Health does not waive that defense or any other asserted in its Answer to the Complaint.

lawful, but courts hold that when a procedure like the No Lunch code is available employers cannot be liable for unpaid wages if employees fail to use it. *See, e.g.*, *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012) (explaining that when an employee fails to use such a procedure to report meal-break work she prevents the employer from "knowing its obligation to compensate" and "thwarts the employer's ability to comply with the FLSA").

With that background in mind, Plaintiff's unpaid meal break claims fail for two independent reasons. First, Plaintiff has conceded that she has no evidence that she performed any uncompensated work during her meal breaks in 2017 or 2019. As for 2018, she testified only that she had trouble finding time to take a meal break during her preferred window of 12:30 p.m. to 2:00 p.m. But it is undisputed that there was almost always a period of *30 minutes or more* between 11:00 a.m. and 5:00 p.m. when there were *no patients* at the clinic in which Plaintiff worked. Thus, she had plenty of time to take meal breaks and no reasonable jury could find otherwise.

Second, Novant Health had no knowledge of any work Plaintiff purportedly performed during meal breaks—much less without compensation. To the contrary, it is undisputed that Plaintiff knew she was supposed to use the No Lunch code to report and be paid for any missed or interrupted meal breaks. Indeed, she used the No Lunch code 15 times in 2018 alone, including *after* filing this lawsuit. While Plaintiff now claims there were other occasions in 2018 when she failed to use the No Lunch code, as noted the law makes clear that Novant Health cannot be held liable for any resulting unpaid wages. This is especially true considering Plaintiff's admissions that she *never* told her supervisors when she neglected to use the No Lunch code, she *always* took a full meal break when her supervisors were present in the clinic, and the *only time* she ever told a supervisor she missed a meal break the supervisor instructed her to use the No Lunch code (which Plaintiff did). In short, the undisputed material facts foreclose any reasonable conclusion that

2

Novant Health had actual or constructive knowledge of any occasion when Plaintiff purportedly worked during her meal break without compensation. *See White*, 699 F.3d at 873-76 (affirming summary judgment in favor of employer-hospital on plaintiff-nurse's unpaid meal break claims under virtually identical circumstances).

For these reasons and as discussed further below, the Court should grant summary judgment in favor of Novant Health, and dismiss Plaintiff's claims with prejudice.

## UNDISPUTED MATERIAL FACTS

### I. The Novant Health System

Novant Health is a nonprofit corporation that supports a number of tax exempt subsidiaries comprising the Novant Health system. The Novant Health system includes hundreds of locations throughout North Carolina and elsewhere, including hospitals, physician clinics, urgent care clinics, express care centers, surgical centers, and imaging centers, which provide an array of health care services. Ex. 1, Decl. of L. Massey ("Massey Decl.") ¶ 2; ECF No. 22, Answ. ¶ 10.

### II. Novant Health Maintains Written Policies And An Electronic Timekeeping System.

Novant Health maintains written policies related to timekeeping, meal periods, and compensation for the employees of its affiliated entities. Ex. 2, March 2018 Timekeeping Policy; Ex. 3, Feb. 2017 Timekeeping Policy; Ex. 4, Handbook; Ex. 5, Y. Marshall Dep. ("Marshall Dep.") at 129:14-132:7, 136:20-139:18, 141:18-142:12. For timekeeping purposes, the Novant Health system uses an electronic system, called API. Hourly-paid employees must use the API system to clock in at the start of their shift and clock out at the end of their shift, and their "[t]ime must be recorded exactly as it is worked." Ex. 4, Handbook at NH_00000791.

Under Novant Health policies, "[e]mployees are granted time during their daily schedule for meals." Ex. 4, Handbook at NH_00000791; Ex. 2, March 2018 Timekeeping Policy at NH_00000416 ("Meal periods are established for each department."); Ex. 3, Feb. 2017

3

Timekeeping Policy at NH_00000848 (same). Novant Health considers a meal break to be one in which the employee is "completely relieved of all duties, active or inactive, while eating." Ex. 4, Handbook at NH_00000791; Ex. 6, Massey Dep. at 68:23-70:23. The Novant Health policy encourages employees to take a meal break during their shifts. Ex. 2, March 2018 Timekeeping Policy at NH_00000415; Ex. 7, Wade Decl. ¶¶ 4-6.

To that end, the API system automatically deducts a 30-minute meal break from all shifts of six hours or more. Ex. 2, March 2018 Timekeeping Policy at NH_00000416.[3] Novant Health's policies make clear, however, that "[w]hen a meal period is not taken, the employee must clock out using the 'No Lunch' function at the end of his/her shift." *Id.*; Ex. 5, Marshall Dep. at 24:4-9.[4] Employees are instructed to use the No Lunch function if they miss their meal break or if they are unable to take a full meal break due to work interruptions. Ex. 5, Marshall Dep. at 150:23-151:18; Ex. 6, Massey Dep. 68:23-71:2; Ex. 7, Wade Decl. ¶ 4. The No Lunch function—or No Lunch code—overrides the automatic 30-minute deduction, ensuring the employee is paid for the missed meal break in its entirety. Ex. 5, Marshall Dep. 24:4-17; Ex. 7, Wade Decl. ¶ 4.

### III. Plaintiff Is A Registered Nurse At The Rocky River Urgent Care Clinic.

Plaintiff was hired as a Registered Nurse by Carolina Medical Enterprises, Inc., a Novant Health affiliate, on November 20, 2017. *See* Ex. 8, Offer Letter; Ex. 5, Marshall Dep. at 57:22-

---

[3] The meal break deduction only occurs after six full hours have elapsed since the employee's last log-in. For example, if an employee logs in at 8:00 a.m., logs out at 12:00 p.m., then logs back in at 1:00 p.m., and continues to work until 6:00 p.m., the automatic deduction would not apply because the employee was not logged in for six continuous hours. Ex. 1, Massey Decl. ¶ 7.

[4] If an employee forgets to use the No Lunch code at the end of her shift, the employee may enter a "clocking edit request" in the API system at the beginning of the next shift to ensure she is paid for the time worked. Ex. 2, March 2018 Timekeeping Policy at NH_00000416; Ex. 5, Marshall Dep. at 150:12-151:18. Alternatively, an employee can add a missed meal period to her timekeeping records through a Payroll Adjustment form. Ex. 2, March 2018 Timekeeping Policy at NH_00000416.

4

58:13.  As indicated in her offer letter, Plaintiff was hired to staff the Rocky River urgent care clinic.  *Id.*; Ex. 5, Marshall Dep. at 62:1-24.  At the time, Rocky River was a new clinic and had not yet opened.  So between November 20, 2017 and January 16, 2018, Plaintiff split her time between the Waverly and Matthews urgent care clinics.  Ex. 5, Marshall Dep. at 65:14-66:2.  When Rocky River opened on January 17, 2018, Plaintiff began working there exclusively, except for a few occasions when she agreed to cover shifts at other urgent care clinics.  *Id.* at 65:20-66:13.

Plaintiff was typically scheduled to work three, twelve-hour shifts and one, six-hour shift each week.  *Id*. at 66:17-67:19.  She was paid a regular hourly rate of $28.70, which was later increased to $30.99.  Ex. 1, Massey Decl. ¶ 9.  Plaintiff has had two direct supervisors:  Alicia Wade from November 2017 through December 2018, and Lisa Resch since January 2019, both of whom reported to clinic manager Lydia Massey.  Ex. 5, Marshall Dep. at 87:11-23, 91:25-92:3; Ex. 1, Massey Decl. ¶ 3; Ex. 7, Wade Decl. ¶ 3.  According to Plaintiff, she would only see her supervisors about once a month, when they happened to be working at Rocky River rather than one of the other clinics they supervised.  Ex. 5, Marshall Dep. at 88:6-89:1, 90:10-15.  During each of her shifts at Rocky River, Plaintiff would work with a radiology technician; a medical doctor, nurse practitioner, or physician's assistant; a clinic receptionist; and occasionally a supervisor.  *Id.* at 69:23-71:20, 89:9-16.

Rocky River operates from 8:00 a.m. to 8:00 p.m., seven days a week.  *Id.* at 67:20-68:2.  Since opening in 2018, Rocky River has experienced low patient volume relative to other urgent care clinics.  Ex. 1, Massey Decl. ¶ 4; Ex. 5, Marshall Dep. at 95:7-18, 102:24-103:2 (agreeing that Rocky River had lower patient volume than other clinics).  Rocky River saw on average just 18.6 patients per day in 2018.  Ex. 1, Massey Decl. ¶ 5.  On 90 percent of all days Plaintiff worked in 2018, there was at least one period of 30 minutes or more between the hours of 11:00 a.m. and

5

5:00 p.m. during which there were no patients in the clinic.[5] *Id.* ¶ 6. Clinic manager Massey testified that, given Rocky River's patient volume, she would not expect nurses to have difficulty taking a meal break during their shifts. Ex. 6, Massey Dep. at 97:22-98:12, 99:15-100:11.

## IV. Plaintiff Understood That She Should Use The No Lunch Code For Missed Or Interrupted Meal Breaks, And She Did So Repeatedly.

Plaintiff testified that she received copies of Novant Health's Timekeeping Policy and Handbook. Ex. 5, Marshall Dep. at 129:14-132:7, 136:20-139:18; Ex. 9, Acknowledgment. Plaintiff also testified that she received training on the Timekeeping Policy and how to use the API system. Ex. 5, Marshall Dep. at 146:5-15, 149:21-150:7.

Plaintiff understood that, according to Novant Health's policies, if she did not take a full 30-minute meal break during her shift, she was required to enter the No Lunch code in API to ensure she was paid for that time. *Id.* at 24:4-17. Plaintiff testified that she was specifically instructed to enter the No Lunch code if she missed her meal break entirely or if it was interrupted. *Id*. at 150:23-151:18. Plaintiff used the No Lunch code at least 19 times between November 2017 and December 2018. Ex. 1, Massey Decl. ¶ 8.

## V. Plaintiff Concedes That She Has No Claim For Unpaid Meal Breaks In 2017 Or 2019, That She Only Had Difficulty Taking Meal Breaks In 2018 Between 12:30 p.m. And 2:00 p.m., And That She Never Told Her Supervisors She Missed A Meal Break Without Using The No Lunch Code.

Plaintiff testified that she had no difficulty taking her meal breaks when she worked at the Waverly and Matthews clinics between November 20, 2017 and January 16, 2018. *Id*. at 177:6-178:4. Plaintiff likewise has had no difficulty taking meal breaks at Rocky River since January

---

[5] On 98 percent of all days Marshall worked in 2018, there was at least one thirty-minute period between the hours of 11:00 a.m. and 5:00 p.m. during which there was no patient in an examination room for consultation or treatment. Ex. 1, Massey Decl. ¶ 6.

2019, when she adopted the practice of taking her break at the same time as the doctor assigned to her shift. *Id.* at 178:11-179:17.

By contrast, Plaintiff testified that when she worked at Rocky River between January and December 2018, she had difficulty taking a meal break during her preferred window of 12:30 p.m. to 2:00 p.m. *Id.* at 185:20-188:25. Plaintiff testified that she generally would only take a meal break if one was available during these hours. *Id.* Thus, even if there were no patients in the clinic at 11:30 a.m., Plaintiff would not take a meal break at that time. Ex. 5, Marshall Dep. at 187:20-188:16. Plaintiff testified that, when the clinic was slow, she would fill this (paid) time by, for example, taking cigarette breaks, talking to coworkers, and shopping online. *Id.* at 174:15-175:19.

Plaintiff used the No Lunch code 15 times in 2018, including on December 3, 2018, several weeks *after* she filed her Complaint alleging she was not permitted to use the No Lunch code. Ex. 1, Massey Decl. ¶ 8; Compl. ¶ 27. On these occasions, Plaintiff admitted she was paid for the missed or interrupted meal breaks and no one told her she should not have used the No Lunch code. Ex. 5, Marshall Dep. at 153:6-13, 159:7-14, 162:24-163:11. Nevertheless, Plaintiff testified that there were other occasions in 2018 when she did not use the No Lunch code because of three comments made by supervisor Wade. Ex. 5, Marshall Dep. at 151:19-152:10, 162:24-163:11.

Two of the three comments related to Plaintiff's 12-hour shifts. First, on March 26, 2018, Plaintiff received an email from Wade containing the following statement:

> When putting in [the No Lunch code] be sure that you truly did not have the time to take a 30 min[ute] break [at] any point in your shift. Some are taking breakfast and not attempting lunch until later in the shift and then it is impossible due to [patient] numbers. At all of our clinics it is rare that you do not have 30 min[utes] that you can take each day especially since we have 2-3 staff members that can cover a 30 min[ute] break.

7

*Id.* at 23:5-26:16; Ex. 10, 3/26/18 Email from A. Wade. Second, during a conversation, Wade reiterated that Plaintiff should be able to find time during her 12-hour shift to take a meal break. Ex. 5, Marshall Dep. at 152:14-153:13, 159:7-21.

While Plaintiff suggests these comments discouraged her from using the No Lunch code, she admits that neither Wade nor any other supervisor ever told her that she should not use the No Lunch code during her 12-hour shifts. *Id.* at 153:6-13, 162:24-163:11. Indeed, shortly after Wade made the above comments, Plaintiff received an email reminding her and others to use the No Lunch code when clocking out at the end of their shift. Ex. 11, 4/9/2018 Email; Ex. 5, Marshall Dep. at 27:16-28:20. A few weeks later, on April 25, May 2, and May 9, Plaintiff used the No Lunch code when clocking out at the end of her shift. Ex. 1, Massey Decl. ¶ 8.

The third comment related to Plaintiff's six-hour shift. Plaintiff testified that, sometime between May and October 2018, Wade told her she "should not" use the No Lunch code during her six-hour shift. Ex. 5, Marshall Dep. at 159:15-161:5. Wade testified that her comments were made in the context of encouraging Plaintiff (and others) to take a meal break when available. Ex. 7, Wade Decl. ¶ 6. In other words, Wade was advising that Plaintiff should not use the No Lunch code *rather than* take an available meal break during her six-hour shift. *Id.*

Regardless of how Plaintiff interpreted the comments, she testified that she never told any of her supervisors that she had missed or otherwise worked during a meal break without using the No Lunch code. Ex. 5, Marshall Dep. at 148:25-149:20; *see also* Ex. 7, Wade Decl. ¶ 7. Indeed, Plaintiff could recall only once telling Wade that she had been unable to take a full meal break. Ex. 5, Marshall Dep. at 165:2-166:25. In response, Wade instructed Plaintiff to use the No Lunch code, and Plaintiff complied with that instruction. *Id.* Plaintiff further testified that Wade would not otherwise have known that Plaintiff had missed a meal break, because Wade rarely worked at

8

the Rocky River clinic, and when she did, Plaintiff always took a full meal break. *Id.* at 88:21-89:1, 90:10-15, 164:12-165:1.

## VI. Plaintiff Agrees She Was Paid An Appropriate Overtime Rate, And That The Complaint's Contrary Allegations Are Mistaken.

The Complaint alleges that Plaintiff was not paid one and one-half times her regular rate for overtime purposes. Compl. ¶¶ 14-16. However, during her deposition, Plaintiff reviewed her pay stubs and agreed that the Complaint's allegations are mistaken and that she was paid at least one and one-half times her regular hourly rate for overtime hours worked. Ex. 5, Marshall Dep. at 115:10-117:20, 120:3-13, 123:12-14, 198:4-199:5; Ex. 1, Massey Decl. ¶ 10 (describing the overtime pay calculations reflected on Plaintiff's pay stubs).

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zahodnick v. Int'l Bus. Machs. Corp.,* 135 F.3d 911, 913 (4th Cir. 1997). While courts must view the evidence in the light most favorable to the non-moving party, "the existence of only a 'scintilla of evidence' is not enough to defeat a motion for summary judgment." *Jones v. Philip Morris USA, Inc.,* 2004 WL 769456, at *2 (M.D.N.C. Apr. 8, 2004). Thus, Novant Health is entitled to summary judgment if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## ARGUMENT

## I. Plaintiff's FLSA Claims Fail As A Matter Of Law.

The Complaint claims Novant Health violated the FLSA by: (1) failing to pay Plaintiff an overtime rate of one and one-half times her regular rate; and (2) failing to pay Plaintiff overtime for work performed during meal breaks, when she did not use the No Lunch code. Compl. ¶¶ 12-

9

19, 23-31.  Both claims fail as a matter of law.

### A.  Plaintiff Has Admitted That Her Overtime Rate Claim Is Without Merit.

Under the FLSA, "no employer shall employ any of [its] employees . . . for a work week longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207.  According to the Complaint, Plaintiff was not paid "one and one-half times" her regular hourly rate for overtime, but rather was paid "at insufficient and unlawful rates" ranging from just $0.70 to $1.10 more than her regular rate of approximately $29 per hour.  Compl. ¶¶ 14, 16.

However, during her deposition, Plaintiff reviewed her pay stubs and—using a calculator to confirm—agreed that the Complaint's allegations are wrong.  *Supra* at 9.[6]  Indeed, Plaintiff now agrees she was paid at least one and one-half times her regular rate for overtime.  *See id.*  These admissions foreclose any genuine dispute of material fact and entitle Novant Health to summary judgment.  *See, e.g.*, *Meran v. Rank Trade Servs., Inc.,* 2017 WL 2901202, at *1 (S.D. Fla. May 1, 2017) (granting summary judgment where plaintiffs admitted at deposition that they were paid the correct overtime rate).

### B.  Plaintiff's Meal Break Claim Fails Because She Had Plenty Of Time To Take Meal Breaks And Because Novant Health Lacked Knowledge Of Any Uncompensated Meal-Break Work Plaintiff Allegedly Performed.

Plaintiff's "meal break" claim fares no better.  To prevail, Plaintiff must prove two essential elements.  First, she must prove that she performed compensable work for which she was not paid.  *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 545 (4th Cir. 1998).  Second, she must prove that

---

[6] After confirming that the Complaint's allegations are wrong and that she was paid an appropriate overtime rate, Plaintiff testified that she no longer wanted to proceed with the lawsuit and that she had told her lawyer the same thing during a break in the deposition.  Ex. 5, Marshall Dep. at 143:19-145:20.  However, after another break to confer with her counsel, Plaintiff agreed to continue with the deposition and the litigation.  *See id.* at 193:4-13.

10

Novant Health "suffered or permitted" this work, 29 U.S.C. § 203(g), meaning it had "actual or constructive knowledge" that Plaintiff worked during meal breaks without compensation. *Bailey v. Cnty. of Georgetown,* 94 F.3d 152, 157 (4th Cir. 1996); *White,* 699 F.3d at 873 (same); *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 861-62 (N.D. Ill. 2015) (same). Plaintiff cannot withstand summary judgment on either element.

### 1. No Reasonable Jury Could Find That Plaintiff Was Deprived Bona Fide Meal Periods.

Under the FLSA, employers are not required to compensate employees during bona fide meal periods. 29 C.F.R. § 783.3(d). In applying this rule, the Fourth Circuit has adopted the same standard as the Sixth Circuit: "As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984); *Roy*, 141 F.3d at 545 (adopting the "flexible and realistic" standard established in *Hill*).

Plaintiff cannot prove that she was denied bona fide meal breaks under this standard. First, Plaintiff admitted that she had no difficulty finding time to take her 30-minute meal break between November 2017 and January 16, 2018, when working at the Waverly and Matthews clinics. *Supra* at 6-7. Likewise, Plaintiff testified that she could not recall ever missing a meal break at Rocky River since January 2019, when she started taking her meal break at the same time as the doctor assigned to her shift. *Id.* These admissions confirm that Plaintiff has no evidence that she performed any uncompensated meal-break work in 2017 or 2019.[7]

---

[7] While Plaintiff used the No Lunch code four times in 2017, Ex. 1, Massey Decl. ¶ 8, this only shows that if she worked during a meal break at Matthews or Waverly she was compensated.

Second, while Plaintiff claims she had difficulty taking meal breaks at Rocky River in 2018, that difficulty was of her own making: Plaintiff testified that she elected to take her meal break between 12:30 p.m. and 2:00 p.m. only. *Supra* at 7. However, it is undisputed that there was almost always at least one period of *30 minutes or more* between 11:00 a.m. and 5:00 p.m. when there were *no patients* in the Rocky River clinic. *Id.* at 5-6. These undisputed facts foreclose any reasonable conclusion that Plaintiff was deprived sufficient time to take a 30-minute meal break at any point in 2018. *See Deppen v. Detroit Med. Cntr.*, 2011 WL 2847405, at *7-8 (E.D. Mich. July 19, 2011) (granting summary judgment because patient data indicated "plaintiff had plenty of time to take a thirty-minute meal break, if not more"); *see also Matsushita Elec. Indus.*, 475 U.S. at 587 (summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

### 2. There Is No Evidence That Novant Health Knew Plaintiff Worked During Meal Breaks Without Using The No Lunch Code.

In any event, no reasonable jury could conclude that Novant Health had knowledge of any meal-break work Plaintiff allegedly performed without using the No Lunch code. Here again, Plaintiff testified that she had no trouble taking meal breaks during much of her employment: when working at Waverly and Matthews between November 2017 and January 2018, and when working at Rocky River since January 2019. Thus, there is no basis for concluding that Novant Health had knowledge of any uncompensated meal-break work during these periods.

The same goes for January through December 2018 at Rocky River. The Complaint emphasizes that the API system automatically deducted a 30-minute meal period from Plaintiff's shifts. Compl. ¶ 25. But such automatic deductions are common and perfectly lawful. *See, e.g.*, *White,* 699 F.3d at 873 ("An automatic meal deduction system is lawful under the FLSA."); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.,* 2011 WL 4351631, at *6 (W.D.N.C. Sept. 16, 2011) (same

12

and collecting cases). This is especially true where employees have a reasonable process—like the No Lunch code—for reporting and being compensated for missed or interrupted meal breaks. *White*, 699 F.3d at 876. Indeed, "[u]nder the FLSA, if an employer establishes [such] a reasonable process for an employee to report uncompensated work time the employer is **not liable** for non-payment if the employee fails to follow the established process." *Id.* (emphasis added).

This rule makes sense. When an employee fails to follow a simple procedure to report uncompensated work time, then the employee has effectively prevented the employer from "knowing its obligation to compensate" and "thwart[ed] the employer's ability to comply with the FLSA." *Id.*; *see also, e.g.*, *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981) ("[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . the employer's failure to pay for the overtime hours is not in violation of [the FLSA]."). In these circumstances, there is no sound basis for imposing liability.

The *White* case is particularly instructive. There, the employer maintained a meal break policy like the one at issue here. Specifically, the employer automatically deducted an unpaid meal break from the paychecks of hospital employees who worked shifts of six hours or more. 699 F.3d at 872. If employees missed a meal break, or had one interrupted, they were expected to record the time spent working in an "exception log" to ensure they were paid for that time. *Id.* While the plaintiff testified that she repeatedly told her supervisors she was unable to take her meal breaks, she never informed them that she had not reported these events in the exception log. *Id.* Based upon these facts, the Sixth Circuit affirmed summary judgment in favor of the employer. As the court explained, there was "no way [the employer] should have known [plaintiff] was not being compensated for missing her meal breaks." *Id.* at 876. The plaintiff's admissions that she

13

neglected to use the exception-log procedure and neglected to inform her supervisors about it precluded any reasonable conclusion that the employer had actual or constructive knowledge of any uncompensated work the plaintiff performed during her meal breaks. *Id.*

The same analysis applies here, with greater force. Not only was Plaintiff well aware of the No Lunch code, she used it 15 times throughout 2018. *Supra* at 6-7. While Plaintiff now claims she sometimes neglected to use No Lunch code, she admittedly *never told her supervisors* about it. *Id.* at 8-9. To the contrary, Plaintiff testified that she *always* took her meal break when her supervisors were around and the *only time* she ever told a supervisor that she missed a meal break the supervisor specifically instructed her to use the No Lunch code. *Id.* These admissions foreclose any reasonable conclusion that Novant Health should have known if Plaintiff worked during a meal break without compensation—if anything, Plaintiff's own actions prevented such knowledge. *See, e.g.*, *White*, 699 F.3d at 877; *Roberts*, 119 F. Supp. 2d at 857, 862 (summary judgment in hospital's favor where nurse failed to use "no lunch" function for "missed or interrupted" meal periods and did not otherwise inform supervisors "about any of the unpaid overtime she now claims she worked"); *Deppen*, 2011 WL 2847405, at *10 (same because there was no evidence nurses "were required and expected to work through their meal breaks, or that [their supervisors] had knowledge that they were working through their meal breaks").

Wade's purported comments between March and October 2018 do not suggest otherwise. The first two merely involved Wade's observation that given low patient volumes, employees should be able to take a meal break during their 12-hour shifts. *Supra* 7-8. Neither Wade nor anyone else ever told Plaintiff she should not use the No Lunch code when unable to take a meal break. *Id.* at 8. Rather, Wade specifically instructed Plaintiff to use the No Lunch code the one time Plaintiff actually told her she missed a meal break. *Id.* And Plaintiff repeatedly used the No

14

Lunch code *after* Wade's comments above, *id.* 7-8, further refuting any suggestion that the comments were taken as an instruction not to do so.

Likewise, Wade's comments concerning six-hour shifts were intended to encourage employees to take meal breaks when available rather than electing to skip a meal break and use the No Lunch instead. *Supra* at 8. While Plaintiff may try to salvage her claim by offering a different interpretation of Wade's comments, any dispute about their meaning is immaterial. Regardless of how Plaintiff interpreted the comments, there is no evidence that Wade had any knowledge that Plaintiff ever performed uncompensated work during her meal breaks. As discussed, Plaintiff testified that: (1) she *only once* told Wade that she missed a meal break, after which Wade specifically instructed her to use the No Lunch code; (2) she *never* told Wade that she worked during a meal break without using the No Lunch code; and (3) she *always* took a full meal break when Wade was at Rocky River. *Id.* at 7-8. Especially when combined with Rocky River's low patient volume, *id.* at 5-6, these admissions render any argument that Wade had constructive knowledge that Plaintiff performed uncompensated work during her six-hour shifts far too speculative to avoid summary judgment. *See Roberts*, 119 F. Supp. 3d at 861 (rejecting "constructive knowledge argument" as "speculative" because it depended on assumptions regarding the supervisor's knowledge without sufficient evidentiary basis).

## II. Plaintiff's NCWHA Claims Fail As A Matter of Law.

Plaintiff's NCWHA claim fails for the same reasons discussed above. The NCWHA "is modeled after" the FLSA. *Rehberg v. Flowers Baking Co. of Jamestown, LLC,* 162 F. Supp. 3d 490, 503-04 (W.D.N.C. 2016). Thus, North Carolina courts look to the FLSA for guidance when interpreting the NCWHA. *Id.* As the applicable regulations explain, where the North Carolina legislature has adopted the language or terminology of the FLSA, federal interpretations are

15

persuasive and "carry great weight as a guide to the meaning of the North Carolina provisions." 13 N.C. Admin. Code 12.0103.

Here, Plaintiff's NCWHA claim arises under N.C. Gen. Stat. § 95-25.6, which provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6; Compl. ¶ 73.[8] In other words, Plaintiff claims that she was not paid "all accrued wages on [her] regular paydays for all hours worked." Compl. ¶ 74. Because claims for overtime wages under the NCWHA are preempted by the FLSA, N.C. Gen. Stat. § 95-25.14(a), Plaintiff's NCWHA claim is necessarily limited to any meal-break work allegedly performed during weeks in which she did not work over 40 hours (and therefore was not entitled to overtime compensation under the FLSA).

While limited to non-overtime hours, Plaintiff's claims under the NCWHA are otherwise duplicative of her FLSA claim. More important, the language of the NCWHA confirms that the Court should analyze the two claims in the same manner. Under the NCWHA, the term "hours worked" means "all time an employee is employed." N.C. Gen. Stat. § 95–25.2(3). The term "employ" in turn means to "suffer or permit to work," N.C. Gen. Stat. § 95–25.2(8), which is identical to the definition of "employ" under the FLSA, 29 U.S.C. § 203(g). And, as already discussed, federal interpretations of the FLSA's requirements are entitled "great weight" in applying the NCWHA. 13 N.C. Admin. Code 12.0103. Accordingly, because the undisputed material facts confirm that no reasonable jury could conclude (1) that Plaintiff was deprived adequate meal periods and/or (2) that Novant Health had actual or constructive knowledge that

---

[8] The Complaint also invokes NCWHA § 95-25.7. But that section applies only to former employees. See N.C. Gen. Stat. § 95-25.7. Plaintiff still works at Rocky River.

Plaintiff performed uncompensated meal-break work, Novant Health is entitled to summary judgment on Plaintiff's remaining claim under the NCWHA.

## CONCLUSION

For the foregoing reasons, this Court should enter an order granting judgment in favor of Novant Health and dismissing Plaintiff's claims with prejudice, and awarding all other relief that this Court deems just.

Dated: August 7, 2019

Respectfully Submitted,

/s/ *Christopher J. Boran*

Patrick E. Kelly, NC State Bar No. 16703
Kimberly J. Kirk, NC State Bar No. 44255
**JOHNSTON, ALLISON & HORD, PA**
1065 East Morehead Street
Charlotte, North Carolina 28204
T:  704.332.1181
F:  704.376.1628
pkelly@jahlaw.com
kkirk@jahlaw.com

Sari M. Alamuddin (*admitted pro hac vice*)
Christopher J. Boran (*admitted pro hac vice*)
Matthew A. Russell (*admitted pro hac vice*)
Patrick R. Duffey (*admitted pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
T:  312.324.1000
F:  312.324.1001
sari.alamuddin@morganlewis.com
christopher.boran@morganlewis.com
matthew.russell@morganlewis.com
patrick.duffey@morganlewis.com

*Attorneys for Defendant, Novant Health, Inc.*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2019, a true and accurate copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send a notice of electronic filing upon all counsel of record.

/s/ *Christopher J. Boran*
Christopher J. Boran