# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-00633-MOC-DCK

| | |
|---|---|
| YVETTE MARSHALL, on behalf of herself and all other similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) ) | **ORDER** |
| NOVANT HEALTH, INC., ) ) | |
| Defendants, ) ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Novant Health Inc. (Doc. No. 28). Also pending is a Motion for Conditional Certification and Judicial Notice Under 29 U.S.C. § 216(b) filed by Yvette Marshall (Doc. No. 43), and a Motion to Strike the Motion for Conditional Certification filed by Novant Health Inc. (Doc. No. 46).

## I. BACKGROUND

### A. Procedural Background

Plaintiff Yvette Marshall ("Marshall") filed this action against her former employer Defendant Novant Health Inc. ("Novant") on November 26, 2018, while still working for Novant. Marshall's Complaint alleges that Novant violated the Federal Labor Standards Act ("FLSA"), 29 U.S.C §§ 201 et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. GEN. STAT. § 95-25.1 et seq., by failing to compensate her and other similarly situated hourly employees for all hours worked. Specifically, Marshall alleges that Novant violated the FLSA by (1) failing to pay her an appropriate overtime rate; and (2) failing to pay her overtime for work she performed during meal breaks. Based on these same, unpaid meal-break allegations, Marshall also claims she

was deprived of regular (non-overtime) wages in violation of the NCWHA.

Novant filed the pending summary judgment motion on August 7, 2019. Marshall filed a Response, and Novant filed a Reply. On March 3, 2020, Marshall filed a Motion for Conditional Certification and Judicial Notice Under 29 U.S.C. § 216(b). On March 12, 2020, Novant filed a Motion to Strike Marshall's Motion for Conditional Certification. The Court held a hearing on all three motions on June 19, 2020. Thus, this matter is ripe for disposition.

### B. Factual Background

#### Novant's Timekeeping Policies

Novant is a nonprofit corporation that supports a number of tax-exempt subsidiaries comprising the Novant Health system. The Novant Health system includes hundreds of locations throughout North Carolina and elsewhere, including hospitals, physician clinics, urgent care clinics, express care centers, surgical centers, and imaging centers, which provide an array of health care services. (Doc. No. 28, Ex. 1, Decl. of L. Massey ("Massey Decl.") at ¶ 2; Doc. No. 22 at ¶ 10).

Novant maintains written policies related to timekeeping, meal periods, and compensation for the employees of its affiliated entities. (Doc. No. 25, Ex. 2, March 2018 Timekeeping Policy ("2018 Policy"); Ex. 3 Feb. 2017 Timekeeping Policy ("2017 Policy"); Ex. 4, Employee Handbook ("Handbook"); Ex. 5, Y. Marshall Dep. ("Marshall Dep.") at 129:14-132:7, 136:20-139:18, 141:18-142:12.) For timekeeping purposes, Novant uses an electronic system called API. Hourly paid employees must use the API system to clock in at the start of their shift and clock out at the end of their shift, and their "[t]ime must be recorded exactly as it is worked." (Handbook at NH_00000791). Under Novant policies, "[e]mployees are granted time during their daily schedule for meals." (Id.; 2018 Policy at NH_00000415; 2017 Policy at NH_00000848). Novant considers

a meal break to be one in which the employee is "completely relieved of all duties, active or inactive, while eating." (Handbook at NH_00000791; Doc. No. 28, Ex. 6, Massey Dep. ("Massey Dep.") at 68:23-70:23). The Novant Health Policy encourages employees to take a meal break during their shift. (2018 Policy at NH_00000415; Doc No. 28, Ex. 7 Wade Declaration ("Wade Decl.") at ¶¶ 4-6).

Instead of having employees log out and log back into the API system to record their lunch break, Novant's policy is to automatically deduct a 30-minute meal break from all shifts of six hours or more. (2018 Policy at NH_00000416). Novant Health's policies make clear, however, that "[w]hen a meal period is not taken, the employee must clock out using the 'No Lunch' function at the end of his/her shift." (Id.; Marshall Dep. at 24:4-9:4). Even though Novant's Employee Handbook and Timekeeping Policy do not expressly mention what to do if a meal break is interrupted, Novant appears to instruct employees to use the No Lunch function if they are unable to take a full meal break due to work interruptions. (Marshall Dep. at 150:23-151:18; Massey Dep. at 68:23-71:2; Wade Decl. at ¶ 4). The No Lunch function—or No Lunch code—overrides the automatic 30-minute deduction, ensuring the employee is paid for the missed meal break or interrupted meal break in its entirety. (Marshall Dep. at 24:4-17; Massey Dep. at 69:24-73:25; Wade Decl. at ¶ 4). However, this policy also ensures that there is no way for an employee to record a meal break that is less than 30 minutes. (Doc. No. 32, Ex. 1, Purdie Deposition ("Purdie Dep.") at 56:5-15; Doc. No. 32, Marshall Declaration ("Marshall Decl.") at ¶ 16).

<u>Marshall's Work as Registered Nurse at Rocky River Urgent Care Clinic</u>

Marshall was employed as a Registered Nurse by Carolina Medical Enterprises, Inc. a Novant affiliate, on Nov. 20, 2017. (Doc. No. 28, Ex. 8 Offer Letter ("Offer"); Marshall Dep. at 57:22-58:13; Doc. No. 1 Complaint ("Compl.") at ¶ 13). As indicated in her offer letter, Marshall

3

Case 3:18-cv-00633-MOC-DCK   Document 56   Filed 09/17/20   Page 3 of 18

was hired to staff the Rocky River urgent care clinic. (Marshall Dep. at 62:1-24). At the time, Rocky River was a new clinic and had not yet opened. So between November 20, 2017, and January 16, 2018, Marshall split her time between the Waverly and Matthews urgent care clinics. (Marshall Dep. at 65:14-66:2). When Rocky River opened on January 17, 2018, Marshall began working there exclusively, except for a few occasions when she agreed to cover shifts at other urgent care clinics. (Id. at 65:20-66:13).

Marshall was typically scheduled to work three, twelve-hour shifts and one, six-hour shift each week. (Id. at 66:17-67:19). She was paid a regular hourly rate of $28.70, which was later increased to $30.99. (Massey Decl. at ¶ 9). Marshall's duties included triaging patients, completing initial patient intakes, assessing the urgency of a patient's condition, updating charts, taking patients to rooms, taking and assessing patient vitals, opening the lab, stocking the lab, and ordering lab tests and entering lab test results. (Marshall Dep. at 77:4-78:3). Marshall has had two direct supervisors: Alicia Wade from November 2017 through December 2018, and Lisa Resch from January 2019 until the end of her employment with Novant, both of whom reported to clinic manager Lydia Massey. (Marshall Dep. at 87:11-23, 91:25-92:3; Massey Decl. at ¶ 3; Wade Decl. at ¶ 3). According to Marshall, she would only see her supervisors about once a month, when they happened to be working at Rocky River rather than one of the other clinics they supervised. (Marshall Dep. at 88:6-89:1, 90:10-15). During each of her shifts at Rocky River, Marshall would work with a radiology technician, a medical doctor, nurse practitioner or physician's assistant, a clinic receptionist, and occasionally a supervisor. (Id. at 69:23-71:20, 89:9-16).

Rocky River operates from 8:00 a.m. to 8:00 p.m., seven days a week. (Id. at 67:20-68:2). Since opening in 2018, Rocky River has experienced low patient volume relative to other urgent care clinics. (Massey Decl. at ¶ 4; Marshall Dep. at 95:7-18, 102:24-103:2). Rocky River saw on

4

average just 18.6 patients per day in 2018. (Massey Decl. at ¶ 5). On 90 percent of all days Marshall worked in 2018, there was at least one period of 30 minutes or more between 11:00 a.m. and 5:00 p.m. during which there were no patients in the clinic. (Id. at ¶ 6). On 98 percent of all days Marshall worked in 2018, there was at least one thirty-minute period between the hours of 11:00 a.m. and 5:00 p.m. during which there was no patient in an examination room for consultation or treatment. (Id.). Given this data, clinic manager Massey testified that, given Rocky River's low patient volume, she would not expect nurses to have difficulty taking a meal break during their shifts. (Massey Dep. at 97:22-98;12, 99:15-100:11).

Nevertheless, due to the sporadic nature of the urgent care setting—i.e. unscheduled patient visits and unpredictable patient volume and care needed—Marshall often times experienced interrupted meal breaks or was unable to take a meal break at all. (Marshall Decl. at ¶¶ 8-13). If Marshall misses a meal break, the "No Lunch" code should be entered when she clocks out of Novant's API timekeeping system. But Marshall has claimed both that she is discouraged from using the code if it would result in overtime hours worked and that there is no way for her to record time worked when her meal break is interrupted. (Id. at ¶¶ 15-17).

Marshall testified that she received copies of Novant's Timekeeping Policy and Handbook. (Marshall Dep. at 129:14-132:7, 136:20-139:18; Doc. No. 28, Ex. 9, Employee Handbook Acknowledgment). Marshall also testified that she received training on the Timekeeping Policy and how to use the API system. (Marshall Dep. at 146:5-15, 149:21-150:7).

Marshall also testified in her deposition that she understood that, according to Novant's policies, if she did not take a full 30-minute meal break during her shift, she should enter the No Lunch code in API to ensure she was paid for that time. (Id. at 24:4-17). Marshall further testified that she was specifically instructed to enter the No Lunch code both when she missed

5

her meal break entirely or when her meal break was interrupted. (Id. at 150:23-151:18). Marshall used the No Lunch code at least 19 times between November 2017 and December 2018. (Massey Decl. at ¶ 8).

Marshall testified that she had no difficulty taking her meal breaks when she worked at the Waverly and Matthews clinics between November 20, 2017, and January 16, 2018. (Marshall Dep. at 177:6-178:4). Marshall likewise has had no difficulty taking meal breaks at Rocky River since January 2019, when she adopted the practice of taking her break at the same time as the doctor assigned to her shift. (Id. at 178:11-179:17).

By contrast, Marshall testified that when she worked at Rocky River between January and December 2018, she had difficulty taking a meal break. (Id. at 185:20-188:25). During that year, she used the No Lunch code 15 times in 2018, including on December 3, 2018, several weeks after she filed her Complaint. (Massey Decl. at ¶ 8). On these occasions, Plaintiff admitted she was paid for the missed or interrupted meal breaks and no one told her she should not have used the No Lunch code. (Marshall Dep. at 153:6-13, 159:7-14, 162:24-163:11). Nevertheless, Marshall testified that there were other occasions in 2018 when she did not use the No Lunch code because of three comments made by supervisor Wade. (Id. at 151:19-152:10, 162:24-163:11).

Two of the three comments related to Plaintiff's 12-hour shifts. First, on March 26, 2018, Marshall received an email from Wade containing the following statement:

> When putting in [the No Lunch code] be sure that you truly did not have the time to take a 30 min[ute] break [at] any point in your shift. Some are taking breakfast and not attempting lunch until later in the shift and then it is impossible due to [patient] numbers. At all of our clinics it is rare that you do not have 30 min[utes] that you can take each day especially since we have 2-3 staff members that can cover a 30 min[ute] break.

(Id. at 23:5-26:16; Doc. No. 28, Ex. 10, 3/26/18 Email from A. Wade). Second, during a

6

conversation, Wade reiterated that Marshall should be able to find time during her 12-hour shift to take a meal break. (Marshall Dep. at 152:14-153:13, 159:7-21).

While Marshall suggests these comments discouraged her from using the No Lunch code, she also states that neither Wade nor any other supervisor ever told her that she should not use the No Lunch code during her 12-hour shifts. (Id. at 153:6-13, 162:24-163:11). Indeed, shortly after Wade made the above comments, Plaintiff received an email reminding her and others to use the No Lunch code when clocking out at the end of their shift. (Doc. No. 28, Ex. 11, 4/9/2018 Email; Marshall Dep. at 27:16-28:20). A few weeks later, on April 25, May 2, and May 9, Plaintiff used the No Lunch code when clocking out at the end of her shift. (Massey Decl. at ¶ 8).

The third comment related to Marshall's six-hour shift. Marshall testified that, sometime between May and October 2018, Wade told her she "should not" use the No Lunch code during her six-hour shift. (Marshall Dep. at 159:15-161:5). Wade testified that her comments were made in the context of encouraging Plaintiff (and others) to take a meal break when available. (Wade Decl. at ¶ 6).

Marshall further testified that she never told any of her supervisors that she had missed or otherwise worked during a meal break without using the No Lunch code. (Marshall Dep. at 148:25-149:20; Wade Decl. at ¶ 7). Indeed, Marshall could recall only once telling Wade that she had been unable to take a full meal break. (Marshall Dep. at 165:2-166:25). In response, Wade instructed Plaintiff to use the No Lunch code, and Plaintiff complied with that instruction. (Id.). Marshall further testified that Wade would not otherwise have known that she had missed a meal break because Wade rarely worked at the Rocky River clinic and, when she did, Marshall always took a full meal break. (Id. at 88:21- 89:1, 90:10-15, 164:12-165:1).

Finally, the Complaint alleges that Marshall was not paid one and one-half times her regular rate for overtime purposes. (Compl. at ¶¶ 14-16). But during her deposition, Marshall reviewed her pay stubs and agreed that the Complaint's allegations are mistaken and that she was paid at least one and one-half times her regular hourly rate for overtime hours worked. (Marshall Dep. at 115:10-117:20, 120:3-13, 123:12-14, 198:4-199:5; Massey Decl. at ¶ 10). In a later filing, Marshall noted that she does not contest Novant's Summary Judgment Motion with respect to her overtime pay claim. (Doc. No. 32, Response ("Resp") at 2).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S.

at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of her claim.

### B. FLSA

The "FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Ketner v. Branch Banking & Tr. Co., 143 F. Supp. 3d 370, 374 (M.D.N.C. 2015), (citing Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013)). Employers subject to the FLSA must generally (with some exceptions not applicable here) compensate employees at the overtime rate for all work performed over 40 hours per week. Roy v. Cty. of Lexington, S.C., 141 F.3d 533, 538 (4th Cir. 1998). To state a plausible FLSA overtime claim in this Circuit, plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a

given week." Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017). A plaintiff may meet this initial standard "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." Id. Under the FLSA, employers are not required to compensate employees during bona fide meal periods. 29 C.F.R. § 783.3(d). In applying this rule, the Fourth Circuit has adopted the same standard as the Sixth Circuit: "As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." Hill v. United States, 751 F.2d 810, 814 (6th Cir. 1984); Roy, 141 F.3d at 545 (adopting the "flexible and realistic" standard in Hill).

### C. NCWHA

Courts in this Circuit "look to the FLSA for guidance when interpreting the NCWHA." Rehberg v. Flowers Baking Co. of Jamestown, LLC, 162 F. Supp. 3d 490, 503 (W.D.N.C. 2016). The North Carolina Administrative Code states that "judicial and administrative interpretations and rulings established under [] federal law" may serve as a guide for interpreting North Carolina laws when the North Carolina Legislature has adopted provisions of the FLSA. 13 N.C. Admin. Code 12.0103; Whitehead v. Sparrow Enter., Inc., 167 N.C. App. 178, 181, 605 S.E.2d 234, 237 (2004). With respect to the definition of "wages," there is no material difference between the NCWHA and the FLSA. Gaxiola v. Williams Seafood of Arapahoe, Inc., 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011) (quoting Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 707 (2009)). In relevant part, the NCWHA provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. GEN. STAT. § 95-25.6.

## III. DISCUSSION

### A. Novant's Summary Judgment Motion

#### 1. Plaintiff's FLSA Claims

Before addressing Marshall's Moton for Conditional Certification, the Court first addresses Novant's motion for summary judgment as to Marshall's FLSA claims that Novant failed (1) to pay her an appropriate overtime rate and (2) to pay her overtime for work she performed during meal breaks. Resolving the FLSA claims also guides this Court's decision regarding Marshall's NCWHA claim that she was deprived of regular (non-overtime) wages due to these unpaid meal breaks.

##### a. **FLSA Overtime Rate Pay Claim**

Marshall has admitted that her claim that Novant failed to pay her an appropriate overtime rate is without merit. Under the FLSA, "no employer shall employ any of [its] employees . . . for a week longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. During her deposition, Marshall reviewed her pay stubs and—using a calculator to confirm—agreed that she had been paid the correct amount of overtime pay. Moreover, Marshall has conceded in her response to Novant's summary judgment motion that she no longer argues that she was paid the incorrect amount of overtime pay. (Resp. at 2). These admissions foreclose any genuine dispute of material fact and entitle Novant to summary judgment on Marshall's overtime pay rate claim.

##### b. **FLSA Failure to Pay Overtime for Meal Breaks Claim**

The undisputed evidence offered by the parties shows that Marshall did not have any trouble taking her meal breaks in 2017 or 2019. In her deposition, Marshall stated that she had no difficulty taking meal breaks when she worked at the Waverly and Matthews clinics between

November 20, 2017, and January 16, 2018. (Marshall Dep. at 177:6-178:4). She also made clear that she did not have trouble taking her meal breaks at Rocky River beginning in January 2019 when she adopted the practice of taking her break at the same time as the doctor assigned to her shift. (Id. at 178:11-179:17). So the narrow claim disputed by the parties is whether Novant failed to pay Marshall for compensable meal breaks in 2018.

To prevail on this narrow claim under the FLSA, Marshall must prove that (1) she performed compensable work during meal breaks for which she was not paid; and (2) Novant had "actual or constructive knowledge" that she worked during meal breaks without compensation. Roy, 141 F.3d at 545; Bailey v. Cty. of Georgetown, 94 F.3d 152, 157 (4th Cir. 1996). As the Court explains below, Marshall has failed to create a genuine dispute of material fact with respect to either prong of the FLSA inquiry.

Novant automatically deducts 30 minutes from employees' time at work for meals. If an employee misses a break, they are instructed to use the "No Lunch" code when clocking out so they will be paid for that time. Even though this system is in place, Marshall alleges that Novant provided her with no mechanism for recording and being compensated for interrupted meal breaks. But Marshall's own deposition testimony rebuts her allegations. She admitted that "there was a time when [she] spoke to . . . Jennifer Purdie, [her timekeeper], and told her that [she] had had a meal break interrupted, and [she] asked what [she] should do." In response, Purdie "told [her] to enter the no lunch code." (Marshall Dep. at 150:23-151:4). At the deposition, Marshall agreed that Purdie "had the policy right" with her response. (Id. at 163:17-19). Entering the No Lunch code would ensure that Marshall was paid for the entire 30 minutes of her interrupted meal break. This means she would even be paid for the amount of time in that 30 minutes when she was not working.

Marshall responds to this evidence by continually stating that Novant's system is "rigged"

to not allow for logging meal breaks of less than 30 minutes. (Resp. at 7, 11). But there is a system. The evidence before this Court demonstrates that Novant's employees are instructed to use the No Lunch code to receive full pay for their meal break if that meal is interrupted. The FLSA surely does not prohibit employers from providing full rather than partial pay for an interrupted break. And Marshall has not suggested otherwise.

However, Marshall attempts to argue that there is a genuine issue of fact through a declaration that directly contradicts her sworn deposition testimony. In that declaration, she avers that Novant "does not have any policy that [she is] aware of for recording interrupted meal breaks" and she has "never been instructed on recording interrupted meal breaks by any supervisors until January of 2019." (Marshall Decl. at ¶ 19). But in her deposition, Marshall claimed that she had used the No Lunch code to record and be paid for interrupted meal breaks in 2018. Moreover, Marshall testified that using the No Lunch code to record interrupted meal breaks is consistent with Novant's policy. And she also testified that she had in fact been instructed in 2018 by Jennifer Purdie to record interrupted meal breaks by entering the No Lunch code.

"A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., F.2d 946, 960 (4th Cir. 1984). At the summary judgment stage, "if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." Kinser v. United Methodist Agency for the Retarded—W.N. Carolina, Inc., 613 F. App'x 209, 210-11 (4th Cir. 2015). Given the contradictions between Marshall's declaration and her prior deposition testimony, the Court disregards Marshall's declaration. See, e.g., Blackwell v. Houser, No. 5:16-CV-67-FDW, 2017 WL 4684188, at *9 (W.D.N.C. Oct. 18, 2017) (disregarding plaintiff's inconsistent affidavit on summary judgment).

Setting aside Marshall's declaration, there is simply no evidence to support the argument that Novant prevented Marshall from recording and being paid for interrupted meal breaks.

Marshall also tries to argue that Novant should have set up its timekeeping system to allow employees to record the exact length of an interrupted meal break. But this argument is flawed because it is well established that automatic meal-deduction systems are perfectly lawful under the FLSA. See, e.g., Blaney v. Charlotte-Mecklenburg Hosp. Auth., No. 3:10–CV–592–FDW–DSC., 2011 WL 4351631 at 6 (W.D.N.C. Sept. 16, 2011). Moreover, coupling this system with an instruction to use the No Lunch code when a meal break is interrupted seems to ensure that employees are paid for a full, 30-minute meal period regardless of when or how long their break was interrupted.

In sum, Marshall has failed to present evidence that there was "no way for her to record a meal break that is less than 30 minutes." (Resp. at 3). Rather, her argument is contradicted by her sworn testimony and that of every other witness in the case.

There is also no evidence to show that Marshall was deprived of bona fide meal periods. Looking at Novant's patient intake data, on 90 percent of all days Marshall worked at Rocky River in 2018 there was at least one period of 30 minutes or more between 11:00 a.m. and 5:00 p.m. when there were no patients in the clinic. (Massey Decl. at ¶ 6). Marshall has presented no evidence to dispute this patient volume data. She instead has admitted that Novant's patient-volume data is the best source of information to determine patient volume at Rocky River during shifts she worked. (Marshall Dep. at 98:3-102:10). Nevertheless, Marshall maintains, without providing any evidence, that she experienced interrupted meal breaks 70 percent of the time. (Resp. at 5). But this is not enough to create a genuine issue of material fact. These unsupported statements are insufficient to withstand summary judgment. See, e.g., Deppen v. Detroit Med. Ctr., No. 10-12229,

14

2011 WL 2847405, at *7-8 (E.D. Mich. July 19, 2011) (granting summary judgment because patient data indicated "plaintiff had plenty of time to take a thirty-minute meal break, if not more"); White v. Wash. Gas, No. CIV.A. DKC 2003-3618, 2005 WL 544733, at *5 (D. Md. Mar. 4, 2005) (plaintiff's affidavit attesting to recollection of overtime hours worked, contradicted by time sheets, was insufficient to create a genuine issue of material fact).

Marshall's complaint also fails to meet the second prong of the FLSA inquiry because she has provided no evidence that Novant has "actual or constructive knowledge" that she worked during meal breaks without compensation. In fact, Marshall specifically disclaimed telling her supervisor that she ever worked during a meal break without using the No Lunch code. (Marshall Dep. at 148:25-149:20). On the two occasions when Marshall reported an interrupted meal break, she was instructed to enter the No Lunch code ensuring that she would be paid for those meal breaks, which is exactly what she did. (Marshall Dep. at 150:23-151:18, 165:2-166:25).

Marshall argues that these two reports demonstrate that Novant knew "not only that this work is being performed, but that it is compensable." (Resp. at 11). But Marshall was compensated for the entirety of her missed or interrupted meal breaks on these occasions. (Marshall Dep. at 150:23-151:18, 165:2-166:25). Marshall points to no evidence showing that Novant had knowledge that she was uncompensated for interrupted meal breaks.

Simply put, it is undisputed in the evidence that Marshall was aware of and used the No Lunch code for interrupted meal breaks, does not believe any of her supervisors ever witnessed her working during a meal break, and never informed any of her supervisors that she worked during a meal break without using the No Lunch code to ensure she was paid for that time. (Massey Decl. at ¶ 8; Marshall Dep. at 24:4-17, 148:25-149:20, 150:23-151:18, 165:2-166:25). Under these circumstances, no reasonable jury could conclude that Novant had actual or constructive

knowledge that Marshall performed any work during her meal breaks without compensation. In short, the undisputed material facts foreclose any reasonable conclusion that Novant had actual or constructive knowledge of any work Marshall performed during her meal breaks without compensation.

In sum, Marshall has failed to present evidence on summary judgment to satisfy either prong of the FLSA inquiry regarding her claim that Novant failed to pay her overtime for compensable meal breaks. As such, the Court will grant summary judgment in favor of Novant Health regarding this claim.

### 2. NCWHA Claim for Unpaid Hours Worked

Marshall's NCWHA claim fails for the same reasons discussed above. The undisputed material facts confirm that no reasonable jury could conclude (1) that Marshall was deprived adequate meal periods and/or (2) that Novant had actual or constructive knowledge that Marshall performed uncompensated meal-break work. This Court grants summary judgment in favor of Novant regarding Marshall's NCWHA claim.

### B. Marshall's Motion for Conditional Certification

The Court now turns to address Marshall's Motion to Conditionally Certify a FLSA Collective Class. Marshall seeks conditional certification of her FLSA claims and authorization to send Court-supervised notice of this action pursuant to Section 216(b). Novant opposes the motion. For the following reasons, the Court denies Marshall's motion.

The FLSA allows employees to bring an action to recover on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Neither the FLSA nor the Fourth Circuit has defined "similarly situated," and courts construe this phrase in varying ways—some use a multi-factor analysis, Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001),

others equate the standard to Rule 23's "commonality" requirement, Pefanis v. Westway Diner, Inc., No. 08 CIV 002 DLC, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010), while others analogize to the full Rule 23 inquiry. Epenscheid v. DirectSat USA, LLC, 705 F.3d 770, 772 (7th Cir. 2013). Whatever the approach, however, the plaintiff bears the burden of proving she is "similarly situated" to the members of her proposed collective, thus facilitating an "efficient resolution in one proceeding of common issues of law and fact from the same alleged conduct." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

Marshall cannot meet this burden because she is not similarly situated. A plaintiff cannot be similarly situated for purposes of a collective action if she does not have a viable claim on the merits. See, e.g., In re Family Dollar FLSA Litig., 637 F.3d 508, 518-19 (4th Cir. 2011); White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 877-78 (6th Cir. 2012). Because this Court has concluded that Marshall's claims fail as a matter of law, she does not have a viable claim on the merits. As such, Marshall is not similarly situated to those who have a meritorious claim.

### IV. CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment as to all of Plaintiff's claims and Plaintiff's Motion for Conditional Certification is denied

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 28), is **GRANTED**.
2. Plaintiff's motion for Conditional Certification *and Judicial Notice Under 29 U.S.C. § 216(b)*, (Doc. No. 43), is **DENIED**.
3. Defendant's Motion to Strike Plaintiff's Motion for Conditional Certification *and Judicial Notice Under 29 U.S.C. § 216(b)*, (Doc. No. 46) is **DENIED**.
4. This action is dismissed with prejudice.

5. The Clerk is directed to terminate this action.

Signed: September 17, 2020

Max O. Cogburn Jr.
United States District Judge